## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |
|---|---|
| **TRICIA MASON,** <br> 1337 Moore Place, SW <br> Leesburg, Virginia 20175 <br><br>   **Plaintiff,** <br><br> v. <br><br> **BTL INDUSTRIES, INC.,** <br> 362 Elm Street <br> Marlboro, Massachusetts 01752 <br><br>   **Defendant.** | Case No. _____ |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tricia Mason, by and through her undersigned counsel, hereby brings this claim for sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

### PARTIES & JURISDICTION

1. Tricia Mason is an individual resident of the Commonwealth of Virginia and resides at 1337 Moore Place, SW, Leesburg, Virginia 20175.

2. BTL Industries, Inc. ("BTL") is a corporation formed under the laws of the State of Delaware with its principal office located at 362 Elm Street, Marlboro, Massachusetts 01752.

3. Jurisdiction is proper in this Court pursuant to 42 U.S.C. § 2000e-16(c), 29 U.S.C. § 626(c)(1), and 28 U.S.C. § 1331 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

4.     Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2) as Plaintiff was employed by Defendant in this jurisdiction, worked for Defendant in this jurisdiction, Defendant did work and transacted business in this jurisdiction, and the unlawful events, specifically Mrs. Mason's termination, giving rise to this litigation occurred in this jurisdiction.

5.     BTL is an "employer" as that term is defined by Title VII and the ADEA as, at all relevant times including during Mrs. Mason's employment and at and after the time of her termination, it was engaged interstate commerce and continuously employed more than 20 employees.

6.     On November 15, 2018, Mrs. Mason timely filed a charge of discrimination on the basis of sex with the Equal Employment Opportunity Commission (hereinafter, "EEOC") (Charge No. 570-2019-00449).  Mrs. Mason timely supplemented her EEO charge of discrimination to include a claim for age discrimination on May 3, 2019.  The EEOC issued a right to sue letter to Mrs. Mason on July 10, 2019, which was received by her on or about July 14, 2019.  In conformance with the law, Mrs. Mason has filed the present action prior to the expiration of 90 days from the date of receiving her right to sue letter.  Accordingly, Mrs. Mason has exhausted all administrative remedies.  Therefore, all conditions precedent to Mrs. Mason maintaining this civil action have accrued, occurred, or been waived.

**FACTS**

7.     Mrs. Mason is an experienced and highly accomplished medical sales professional.  She has worked in the medical and medical sales field for 25 years and has developed an expertise in selling medical devices.  She has created a strong network of contracts in the medical profession during her career.  This network has made her very successful.

8. BTL is a developer, manufacturer, and sellers of medical and aesthetic equipment. BTL operates internationally, and makes sales across the country and the globe. Its primary segments include cardiology, pneumology, physical therapy, and medical aesthetics.

9. BTL hired Mrs. Mason in January 2018 as a Medical Sales Consultant covering a region including Virginia, Maryland, and D.C. Mrs. Mason worked from and out of her home in Leesburg, Virginia throughout the duration of her employment with BTL, although she made sales nationally.

10. BTL hired Mrs. Mason to join its newly created division for medical devices associated specifically with women's health. BTL hired five Medical Sales Consultants, including Mrs. Mason, to launch the division. This division complimented BTL's other sales division, aesthetics. Mrs. Mason was tasked with selling women's health devices, but was also permitted and encouraged to sell aesthetics devices as well.

11. Mrs. Mason is 61 years old. She is significantly older than each of the other Medical Sales Consultants hired for her division. The other hires were: Melissa Arnold (female, 40s), Abby Noll (female, late 30s or early 40s), Lou Adissi (male, early 30s), and John Corry (male, early 30s).

12. BTL's sales management team is dominated by men. All of the approximately five Vice Presidents of Sales covering the various regions of the United States are men, and the head of the entire sales division, Scott Mills, is also male. There are no women in sales leadership positions within BTL.

13. Likewise, the sales team is largely dominated by men. Although there were three women to two men initially in the women's health division, BTL's other sales division, aesthetics, was dominated by men. Prior to December 2018, the aesthetics team was comprised

of 23 men and only four women.

14. Very quickly during her employment, Mrs. Mason discovered that BTL fostered and encouraged a boy's club and "frat boy" attitude within its sales division which favored younger employees and men and objectified women as sexual objects. The fraternity culture encouraged male brotherhood, objectified women, encouraged drinking and sexualization, and allowed sexist, sexualized, and ageist comments and conduct to permeate the company.

15. When Mrs. Mason first joined the company, she attended a training with several individuals, including Mr. Mills and Andy Acaru, the Vice President of Sales for the Northeast Region. At one point during the session, Mrs. Mason had her phone out. The background image on Mrs. Mason's phone is a photograph of her 21 year old granddaugther. Mr. Acaru saw the picture and asked who it was. Mrs. Mason responded that it was her granddaughter, and Mr. Acaru stated "I want to hire *her* for my team," in a tone that clearly insinuated that he found her attractive and wanted to hire her strictly based on her looks. He had no information about her skills, credentials, personality or anything else—he only had her looks to go on, and decided that he wanted to hire this young, attractive female. He made this comment in front of Mrs. Mason and other sales individuals whom he had just met for the first time, and humiliated Mrs. Mason with the comment.

16. The sexist and ageist comments and objectification and sexualization of women did not stop there. For example, Mrs. Mason attended a sales meeting with a younger, female doctor in Reston, Virginia. Her boss, Steve Catone, another Vice President, attended with her. After the meeting, Mr. Catone walked out with Mrs. Mason and stated to her, "when I saw [the doctor] in that little red dress, that's all it took, I would have done anything for her." Mr. Catone is a married man and the comment to Mrs. Mason was incredibly inappropriate and left Mrs.

Mason appalled.

17. On another occasion, a young female sales person announced that she was pregnant. In response, a male sales person stated "no wonder your boobs are getting so big."

18. As another example, at the company's annual awards ceremony honoring exceptional sales people within the organization, a young woman was honored for her sales record. When introducing the woman, Mr. Acaru stated to the assembled group "imagine that, a woman actually got an award at our company."

19. These are not isolated examples. Mrs. Mason repeatedly heard, personally and through others, that Mr. Mills, Mr. Acaru, and the other male sales managers and male sales persons frequently made sexual innuendos, commented on women's (particularly young women's) appearances, and made lewd comments about sex and women's bodies.

20. The fraternity and boy's club culture extended to the company's marketing and public appearances. BTL directs much of its marketing and advertising at sexualizing and objectifying young women.

21. As a significant means of marketing, BTL publishes videos online touting its products. Those videos often cast young, attractive females in provocative situations who are wearing underwear, bikinis, or lingerie. The videos make crude sexual innuendos and allege that BTL's products will make women sexual objects of desire for men.

22. In furtherance of this attitude, BTL just launched what it terms the "cougar" initiative. The initiative is a sales and marketing strategy premised on the concept that men sexually prefer young women and BTL should market its products as a means of turning older women into desirable "cougars" for younger men.

23. BTL also makes frequent appearances at trade shows and conferences across the

country.  Mr. Mills, Mr. Acaru, and other men attend these trade shows on behalf of BTL.

24. BTL hires models and "entertainers" to appear at these trade shows and dance and flirt with men around BTL's booths. The women wear lingerie and skimpy outfits and are objectified by Mr. Mills, Mr. Acaru, and others.  The women were not actually users of the products BTL was selling, to the best of Mrs. Mason's knowledge, but were simply there to be "eye candy" for the men.

25. In addition, often after the conference or trade show is over Mr. Mills, Mr. Acaru, and the other male BTL employees go out to drink and socialize at bars and clubs and take the models whom they hired with them.  The women dance provocatively and give lap dances and pose for pictures with the men.  The men then post these photographs online on their Facebook pages, touting that the events were at BTL conferences or business trips.

26. Mr. Mills, Mr. Acaru, and the other male Vice Presidents only invite men and young women to attend these conferences with them.  Mrs. Mason was never invited to attend any of these functions.  The only conference she was asked to attend was a urology conference, which none of the men wanted to attend.

27. The foreseeable consequence of BTL's fraternity and boy's club culture is that men and young female sales persons are favored, given greater sales opportunities, and treated better and with more respect than women, particularly older women like Mrs. Mason.  Mr. Mills, Mr. Acaru, and the other Vice Presidents were friendlier and far more supportive of men and younger females than they were with Mrs. Mason and older women.  The men and younger sales staff often socialized outside of work and excluded older staff members, like Mrs. Mason.  Mrs. Mason felt isolated and excluded as a member of the sales team and watched as her male peers were shown favor and support, invited to events and social gatherings, and otherwise treated far

more favorably than she was.

28.     Despite the foregoing, Mrs. Mason proved her skill and knowledge of the industry and was by far the best performer on the team.  Between her hire in January and her separation from the company on September 10, 2018, Mrs. Mason made sales of approximately $792,000, including devices inside and outside of her territory, and she was on pace for nearly $1,000,000 in combined sales for the year.  Furthermore, many of those sales will result in year-after-year income for BTL into the future.

29.     In contrast, three of the four other Consultants in Mrs. Mason's division had no sales at all (Mr. Adissi, Ms. Arnold, and Ms. Noll) and the other, Mr. Corry, had very few sales that did not approach the level of sales obtained by Mrs. Mason.

30.     Despite Mrs. Mason's outstanding performance, BTL notified Mrs. Mason on September 10, 2018 that she and the four other Medical Sales Consultants in the women's health division were being terminated effective September 28, 2018.

31.     On September 11, 2018, Mrs. Mason spoke with Mr. Mills about the announcement.  Mrs. Mason asked Mr. Mills if there were any other positions in the company for which she could apply.  Mr. Mills represented that BTL did not have the "head count" to transfer Mrs. Mason or allow her to apply for another position.  He claimed BTL had no other open positions for which she could apply or be considered.

32.     Mr. Mills' representation to Mrs. Mason was not true.  BTL in fact only laid off the three women on the women's health team, but placed the two men in new positions.  The two men were in fact transferred to positions for which Mrs. Mason was better-qualified and which she would have accepted had she been given the opportunity to apply or be considered.

33.     Similarly, within approximately a week of Mrs. Mason's termination, she

discovered that a male, non-BTL employee had been offered a position with BTL as a sales manager.  This man is approximately 40 years old.  She also discovered that another male, non-BTL employee, who was also approximately 40 years old, was offered a different sales positions with BTL in the days immediately following Mrs. Mason's termination.  Mrs. Mason was better-qualified for each of these positions than the men to whom the positions were offered and given and would have accepted the positions had she been given the opportunity to apply or been considered.  Mrs. Mason has more sales experience than each of these younger men, including with respect to the specific aesthetics products being offered for sale, and also has a background in sales management, whereas the male candidate offered the position did not.  Mrs. Mason also had more knowledge of BTL and its product from working for the company for months, whereas these younger men were being offered positions from outside the company.

34. At least two other younger men, both of whom were in their 20s or 30s, were also hired as junior sales representatives for BTL shortly after Mrs. Mason was told that she was being terminated and that no other positions were available.  Mrs. Mason was far more qualified than these two individuals, who had limited sales experience, particularly with the types of products they would be tasked with selling in comparison to Mrs. Mason.  Although these were lower-level positions, Mrs. Mason would have accepted these positions rather than accept her termination had she been allowed to apply or had been considered for them.

35. It is clear Mrs. Mason was targeted for termination, rather than retention like her male colleagues, on the basis of BTL's sexist, ageist, and chauvinistic attitude towards women and older employees, particularly older women.  She was terminated based on the stereotypical belief that as an older women, she was not capable to selling BTL's products (even though her track record proved she could) and based on the male management's desire to associate only

with men and younger females.

36. A similar termination practice occurred with respect to BTL's aesthetics team in or around December 2018. Prior to December 2018, the aesthetics team was comprised of 23 men and only four women. Among the women, three were over the age of 40 and one was approximately 30 years old.

37. At the end of 2018, BTL terminated the three women who were over the age of 40 and retained only the one woman who was significantly younger. In addition, at the same time BTL terminated men who were over the age of 40, but did not terminate any man under the age of 40. Many of the people selected for termination by BTL on the aesthetics team were actually far better performers than those retained, as demonstrated by their sales numbers.

## COUNT I
### Discrimination in Violation of Title VII

38. Mrs. Mason re-alleges and incorporates by reference Paragraphs 1 through 37 as if set forth fully herein.

39. BTL, with the intent of discriminating against Mrs. Mason, terminated her on the basis of her sex and gender in violation of Title VII and refused to offer her alternative positions for which she was the most qualified candidate, but instead offered such positions to less qualified men.

40. Mrs. Mason's sex was the motivating factor for the foregoing conduct.

41. As a direct and proximate result of BTL's discriminatory conduct, Mrs. Mason has suffered and continues to suffer injury and damage in the form lost back and future wages and benefits of employment, emotional and physical harm, mental anguish, anxiety, stress, lost earnings capacity, lost career and business opportunities and advancement, damage to reputation, humiliation, and embarrassment.

42. BTL engaged in said conduct intentionally, maliciously, wantonly, oppressively and/or with such recklessness and gross negligence as to evince a conscious disregard for the rights of Mrs. Mason.

**WHEREFORE,** Mrs. Mason respectfully requests that judgment be entered against Defendant and in favor of Mrs. Mason and that Mrs. Mason be awarded the following relief:

A. Damages in an amount not less than $600,000, for lost wages, benefits, and other economic loss, physical and emotional harm, pain and suffering, and reputational harm;

B. Punitive damages in an amount not less than $600,000;

C. Reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 2000e-5(k); and

D. Such other relief as this Court deems just and proper.

## COUNT II
### Discrimination in Violation of ADEA

43. Mrs. Mason re-alleges and incorporates by reference Paragraphs 1 through 37 as if set forth fully herein.

44. BTL, with the intent of discriminating against Mrs. Mason, terminated her on the basis of her age in violation of the ADEA and refused to offer her alternative positions for which she was the most qualified candidate, and instead offered such positions to less-qualified, significantly younger individuals.

45. Mrs. Mason's age was the sole factor for the foregoing conduct.

46. As a direct and proximate result of BTL's discriminatory conduct, Mrs. Mason has suffered and continues to suffer injury and damage in the form lost back and future wages and benefits of employment, emotional and physical harm, mental anguish, anxiety, stress, lost earnings capacity, lost career and business opportunities and advancement, damage to reputation, humiliation, and embarrassment.

47.     BTL engaged in said conduct intentionally, maliciously, wantonly, oppressively and/or with such recklessness and gross negligence as to evince a conscious disregard for the rights of Mrs. Mason.

**WHEREFORE,** Mrs. Mason respectfully requests that judgment be entered against Defendant and in favor of Mrs. Mason and that Mrs. Mason be awarded the following relief:

A.     Damages in an amount not less than $600,000, for lost wages, benefits, and other economic loss;

B.     Liquidated damages in an amount not less than $600,000, pursuant to 29 U.S.C. § 626(b);

C.     Reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 626 (b) and 29 U.S.C. § 216(b); and

D.     Such other relief as this Court deems just and proper.

By Counsel,

*/s/ Nicholas Hantzes*

Nicholas Hantzes, VSB No. 23967
Michael Hall, VSB No. 85481
HANTZES & ASSOCIATES
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial on all issues to which she is entitled to a jury.

*[signature: Nicholas Hantzes]*
_____
Nicholas Hantzes, VSB No. 23967
Michael Hall, VSB No. 85481
HANTZES & ASSOCIATES
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*